IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA HAYHURST               :    CIVIL ACTION
                              :
          v.                  :
                              :
UPPER MAKEFIELD               :
TOWNSHIP, et al.              :    NO. 06-3114

MEMORANDUM AND ORDER

McLaughlin, J.                              June 20, 2007

        Plaintiff Andrea Hayhurst was arrested for disorderly
conduct on June 28, 2006, at Washington Crossing State Park in
Upper Makefield Township, Pennsylvania.  Earlier that day, a
state of emergency and a mandatory evacuation had been declared
for areas of the Township around the Delaware River, including
Washington Crossing Park, because of severe flooding.  Although
the circumstances surrounding her arrest are sharply disputed,
Ms. Hayhurst was arrested for allegedly failing to comply with
police instructions to leave the area and for "yelling and
screaming" at township police officers.[1]  Ms. Hayhurst was
subsequently convicted of disorderly conduct and her appeal of
that conviction is pending.

        Ms. Hayhurst brings this suit pursuant to 42 U.S.C.
§ 1983, against the individual arresting officers, Sergeant

_____

        [1] Non-traffic citation P3982434 issued to Andrea Hayhurst on
June 28, 2006, attached to Ex. E of Defendants' Motion for
Summary Judgment.

Patrick M. Durkin and Corporal Daniel Jones.[2]  Ms. Hayhurst
alleges that the officers arrested her unlawfully and used
excessive force.[3]  The defendants have now moved for summary
judgment on three independent grounds.  They contend that there
is insufficient evidence to allow a jury verdict on either the
false arrest or excessive force claims, that their conduct is
protected by qualified immunity, and that the false arrest claim
is barred by Heck v. Humphrey because success on the claim would
necessarily impugn the validity of her state court conviction.
Ms. Hayhurst has filed both an opposition to the summary judgment
motion and a separate motion for a stay.  The motion for a stay
requests conditional relief, asking that, if the Court finds the
defendants' Heck v. Humphrey argument to be meritorious, it
should not dismiss her claims outright, but place them in
suspense pending the outcome of her appeal of her conviction.

       The Court will deny the defendant's motion for summary
judgment at this time.  Given the numerous disputed issues of

---

[2] Officer Durkin is referred to in the plaintiff's complaint
as a corporal.  At deposition, he testified that he held the rank
of sergeant, and accordingly he will be referred to as such in
this Memorandum.

[3]  Ms. Hayhurst's complaint also named Upper Makefield
Township as a defendant and raised additional claims for
violations of 42 U.S.C. §§ 1985 and 1986.  In her response to the
defendants' motion for summary judgment, the plaintiff has stated
that she is no longer pursuing claims against the township or
claims under §§ 1985 or 1986 (Counts II through IV of the
Complaint).  On the basis of this representation, the Court will
not address these claims here.

fact here, the Court cannot find that, viewed in the light most
favorable to Ms. Hayhurst, there is insufficient evidence to
support a jury verdict on her claims.   For the same reason, the
Court cannot rule now on the defendants' qualified immunity
defense, but must defer a decision on it until after the disputed
issues of fact in this case are resolved by a jury.   The Court,
however, finds that Ms. Hayhurst's claim for unlawful arrest is
barred, at least at this time, by <u>Heck v. Humphrey</u> because a
ruling in the plaintiff's favor on this claim would call into
question the validity of her disorderly conduct conviction.
Because Ms. Hayhurst's conviction is on appeal, however, the
Court will not grant summary judgment on this claim, but will
stay this case until the appeal is resolved and Ms. Hayhurst's
conviction is upheld or overturned.

I.   <u>MATERIAL FACTS</u>

        Many of the material facts of this case are in dispute.
Although the parties agree on the basic outline of the events
that led up to Ms. Hayhurst's arrest, each party proffers an
often mutually contradictory account of the material details.

        Both parties agree that on June 28, 2006, there was a
"flood emergency" in effect along the Delaware River in Upper
Makefield Township, including Washington Crossing State Park.   It
is also undisputed that Ms. Hayhurst, her husband, and her two

3

children, ages three and five, went to Washington Crossing State Park in the evening of June 28, 2006, to go for a walk.  The Hayhursts have testified at deposition that they were unaware of the flood emergency when they arrived at the park.  Deposition of Andrea Hayhurst ("A. Hayhurst Dep.") at 19-20, 23, 34-35 attached as Exhibit A to Plaintiff's Opposition to the Motion for Summary Judgment ("Pl. Br."); Deposition of Steven Hayhurst, Esq. ("S. Hayhurst Dep.") at 11, 13, attached as Exhibit B. to Pl. Br.

Both parties also agree that, very soon after Ms. Hayhurst and her family arrived at the park and left their car, Sgt. Durkin, who was some distance away, shouted at them to leave.  Ms. Hayhurst has testified that although she did not hear exactly what Sgt. Durkin said, she and her family understood that they had been instructed to leave the park.  Both sides agree that Sgt. Durkin then drove up to the Hayhursts and told them to leave, saying they had been previously been warned to do so. A. Hayhurst Dep. at 29-33, 35; Deposition of Sgt. Patrick Durkin ("Durkin Dep.") at 12-13, 16, attached as Exhibit C to Pl. Br.

Sgt. Durkin testified that, before he arrived at this section of the park, he had received a radio transmission from Cpl. Jones, telling him that there were people down by the river who had been told to leave because of the flood emergency.  He testified that Cpl. Jones asked him if he could go to the park and warn them again.  When he arrived, the only people he saw

4

were the Hayhursts, and he believed they were among the group of
people previously warned to leave.  Ms. Hayhurst testified that
she and her family had just arrived at the park and that Sgt.
Durkin was mistaken in his belief that they had previously been
asked to leave.  Cpl. Jones has testified that he specifically
remembers seeing Ms. Hayhurst in the crowd he previously asked to
disperse.  A. Hayhurst Dep. at 35; Durkin Dep. at 10-12, 16;
Deposition of Cpl. Daniel Jones ("Jones Dep.") at 21, attached as
Ex. E. to Pl. Br.

     The parties agree that Ms. Hayhurst commented to Sgt.
Durkin that he was mistaken in believing that they had previously
been asked to leave.  The parties disagree entirely about the
tenor of the subsequent conversation.  Ms. Hayhurst and her
husband testified at deposition that, when Sgt. Durkin approached
them, he pulled up close to them in his car, almost hitting them
and blocking their path.  Both she and her husband testified that
Sgt. Durkin then began yelling at her.  She testified she felt at
this time that she couldn't leave because Sgt. Durkin had told
them to come to him.  Sgt. Durkin, however, testified that he
pulled up 30 feet away from the family and shouted for them to
come over to him.  His testimony is that it was Ms. Hayhurst who
began yelling and became argumentative when he said that she and
her family had been previously warned to leave.  Sgt. Durkin says
that he asked Ms. Hayhurst and her family to leave and that she

5

refused and instead continued to argue with him.  A. Hayhurst
Dep. at 35-38; S. Hayhurst Dep. at 22-24; Durkin Dep. at 12-14,
16-17, 21.

It is undisputed that at some point in this argument
Sgt. Durkin left his vehicle.  Sgt. Durkin has testified that at
the time he left his car, he had decided to arrest Ms. Hayhurst
for disorderly conduct.  It is also undisputed that, while Sgt.
Durkin was out of his car arguing with the Hayhursts, Cpl. Jones
arrived in a separate car.  Both sides agree that Ms. Hayhurst
asked Cpl. Jones to call his supervisor and that Cpl. Jones
responded that Sgt. Durkin was his supervisor.  Both sides also
agree that, at this point, the Hayhurst's children were crying
and upset.  A. Hayhurst Dep. at 37-38, 46, 48, 52-53, 63; Durkin
Dep. at 22-24; Jones Dep. at 25-26

Both parties agree that, after some minutes of further
conversation with Mr. and Ms. Hayhurst, the tenor of which is
sharply disputed, Officer Durkin asked Ms. Hayhurst to sit in the
back of his vehicle.  Ms. Hayhurst testified that Sgt. Durkin was
"enraged" throughout this conversation, but that she does not
recall raising her own voice.  Mr. Hayhurst testified that Sgt.
Durkin was screaming as if he were in a "drug induced rage," and
that if his wife raised her voice it was only to be heard over
him.  In contrast, Cpl. Jones testified that it was Ms. Hayhurst
who was "yelling," and Sgt. Durkin testified that, by this time,

6

Ms. Hayhurst was "flailing" and had "got up in [his] face," pointing her finger at him.  A. Hayhurst Dep. at 47, 55-56; S. Hayhurst Dep. at 33-34; Durkin Dep. at 24-29; Jones Dep. at 26.

In putting Ms. Hayhurst in the police car, Sgt. Durkin testified that he "grabbed" Ms. Hayhurst's arm.  Cpl. Jones has testified that he assisted Sgt. Durkin in placing Ms. Hayhurst in Jones' vehicle and may also have grabbed her arm in doing so. Sgt. Durkin testified that, at this time, he believed he was arresting Ms. Hayhurst and intended to write her a citation. Durkin Dep. at 25-26, 31-32; Jones Dep. at 30

It is undisputed that Ms. Hayhurst was put in the back seat of Sgt. Durkin's vehicle, with the doors closed and windows up, while the officers continued to speak with her husband.  Ms. Hayhurst has testified that she then "tapped" on the window of the vehicle to get the officers' attention and be part of the discussion with her husband.  Her husband testified that she either "tapped or didn't quite tap, but raised her index finger to make the motion to tap on the window."  Both Sgt. Durkin and Cpl. Jones have testified that Ms. Hayhurst "banged" on the window and was asked to stop, but continued to do so.  Sgt. Durkin testified that he was afraid that the window might break. Ms. Hayhurst testified that both officers were laughing and making jokes about her.  Her husband testified that they "may" have used profanity.  The officers deny this.  Both parties agree

that, at some point while she was in Sgt. Durkin's vehicle, Ms. Hayhurst told the officers that her encounter with them would be unflattering to them if it appeared in the local newspaper. A. Hayhurst Dep. at 56-58; S. Hayhurst Dep. at 38-39; Durkin Dep. at 34-36, 38, 52-53; Jones Dep. at 39-41, 49.

Both sides agree that after Ms. Hayhurst either tapped or banged on the window, she was taken out of the car by Sgt. Durkin and handcuffed with her hands in front of her and then placed back in the car.  Ms. Hayhurst testified that Sgt. Durkin told her she was being handcuffed because he had "had it" and had "enough of this," and that when she complained that the handcuffs were too tight, he said that handcuffs "aren't meant to be comfortable."  Sgt. Durkin then told Mr. Hayhurst and his children to go to their car while he wrote Ms. Hayhurst a citation.  Sgt. Durkin then sat in his car with Ms. Hayhurst for several minutes and wrote her a citation for disorderly conduct. Ms. Hayhurst testified that, during this time in the car, Sgt. Durkin complained about how stressful his life was and lectured her on how people needed to obey police officers.  After writing the citation, Officer Durkin removed Ms. Hayhurst's handcuffs, walked her to her car, and let her and her family leave. A. Hayhurst Dep. at 58-59, 62-63, 65-69; Durkin Dep. at 35-39; Jones Dep. at 54.

It is undisputed that, after Ms. Hayhurst was released from the handcuffs, her wrists were reddened.  Ms. Hayhurst testified that this redness lasted six to eight weeks.  Ms. Hayhurst and her husband testified that the handcuffs cut her wrists and drew blood.  Ms. Hayhurst has conceded that she did not seek medical treatment for any injuries, either physical or mental, from being handcuffed and suffered no permanent impairment or scarring.  A. Hayhurst Dep. at 16-17, 73-74; S. Hayhurst Dep. at 40; Jones Dep at 50-51.

Ms. Hayhurst contested her citation and, after a hearing held July 31, 2006, before a Magisterial District Judge, was found guilty of violating 18 Pa. C.S. § 5503(a)(1), prohibiting disorderly conduct in the form of engaging in "fighting or threatening, or in violent or tumultuous behavior."[4] Ms. Hayhurst appealed her conviction to the Bucks County Court of Common Pleas, which held a trial de novo on December 8, 2006, at which Ms. Hayhurst was again found guilty of the same charge of

---

[4]  The citation that Sgt. Durkin issued to Ms. Hayhurst on the date of the incident cited her for a violation of a different section of the disorderly conduct statute than she was eventually convicted of.  Sgt. Durkin cited her for violating 18 Pa. C.S. § 5503(a)(4), which prohibits creating "a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."  At the hearing before the Magisterial District Judge, Ms. Hayhurst was given a second citation for violation of § 5503(a)(1), which prohibits engaging in fighting, threatening or violent or tumultuous behavior.  The Magisterial District Judge acquitted Ms. Hayhurst of violating § 5503(a)(4) and convicted her only of violating § 5503(a)(1).

disorderly conduct.  Ms. Hayhurst has appealed this conviction to the Pennsylvania Superior Court, where her appeal remains pending.

I.   LEGAL DISCUSSION

        The claims remaining in this case are Ms. Hayhurst's § 1983 claims against Sgt. Durkin and Cpl. Jones for unlawful arrest and excessive force in violation of the Fourth Amendment.[5] The defendants make three arguments for summary judgment:   1) that there is insufficient evidence to allow a jury verdict on either claim; 2) that the claims are barred by qualified immunity; and 3) that, as to the unlawful arrest claim, the claim is precluded under Heck v. Humphrey because it is a collateral attack on a state court criminal conviction.  The Court will address each argument in turn.

_____

        [5]  The allegations in the plaintiff's complaint concerning her § 1983 false arrest and excessive force claims state that the defendants' conduct violated both the Fourth and the Fourteenth Amendments to the U.S. Constitution.  In her opposition to the defendants' motion for summary judgment, however, the plaintiff refers only to the Fourth Amendment as the source of the substantive rights that plaintiff seeks to enforce.  The Court therefore understands the plaintiff's to be referring to the Fourteenth Amendment, not as the source of substantive rights against false arrest or excessive force, but rather, under the incorporation doctrine, as the vehicle for making the Fourth Amendment's prohibition against unreasonable searches and seizures applicable to state officials like Sgt. Durkin and Cpl. Jones.  See Mapp v. Ohio, 367 U.S. 643 (1961).  The Court will therefore refer to these claims in this Memorandum as § 1983 Fourth Amendment claims.

A.   Insufficiency of Evidence

The two elements of a § 1983 claim are 1) a deprivation of a federal right 2) that takes place under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980).  The defendants challenge only the first of these elements as to Ms. Hayhurst's claims.  They argue that Ms. Hayhurst has not presented sufficient evidence to show that Officers Durkin and Jones deprived Ms. Hayhurst of a federal right when they arrested and handcuffed her.

Ms. Hayhurst has alleged that the defendants violated two of her rights under the Fourth Amendment:  her right not to be subject to false arrest and her right not to be subject to excessive force.  Although each of these claims is distinct, in the context of this motion, they both turn on the question of whether the defendants acted reasonably.

To state a claim for false arrest under the Fourth Amendment, a plaintiff must show three elements:  that she was "seized" within the meaning of the Fourth Amendment; that this seizure was unreasonable; and that the defendant in question should be liable for the violation.  Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000).  Here, the defendants do not dispute that Ms. Hayhurst's arrest constituted a Fourth Amendment seizure and instead argue that the arrest was reasonable under the circumstances.  They also argue that, even if the evidence is

11

sufficient to make out a false arrest claim against Sgt. Durkin, it is insufficient to make out a claim against Cpl. Jones.

To state a claim for excessive force as a violation of the Fourth Amendment's prohibition against unreasonable searches and seizures, a plaintiff must show both that a seizure occurred and that it was unreasonable. Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999). Because Ms. Hayhurst was arrested, the parties do not dispute that she was "seized." Instead, the defendants argue that no reasonable fact finder could find that the force used to arrest Ms. Hayhurst was unreasonable. They also contend Cpl. Jones cannot be liable for excessive force because he did not handcuff Ms. Hayhurst.

In evaluating the sufficiency of evidence for these claims, the Court is constrained to view the evidence in the light most favorable to Ms. Hayhurst and draw all reasonable inferences in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). For purposes of summary judgment, all of the numerous factual disputes in this case must be resolved in her favor. Harvey v. Plains Tp. Police Dept., 421 F.3d 185, 194 n.12 (3d Cir. 2005). Under this standard, the Court finds that Ms. Hayhurst has presented sufficient evidence to make out both her false arrest and excessive force claims.

Although sharply disputed by the defendants, Ms. Hayhurst's version of events is that, once Sgt. Durkin yelled at

12

her and her family to leave the park, Ms. Hayhurst and her family immediately began walking to their car to leave.  They were prevented from leaving by Sgt. Durkin, who yelled at them to come to his vehicle and then, in an "enraged" state, shouted at them for several minutes.  Ms. Hayhurst and her husband testified that she never refused to leave the park and, if she raised her voice, did so only to be heard over Sgt. Durkin.  They also testified that, after she was arrested and placed in Sgt. Durkin's police vehicle, she was then handcuffed after she only "tapped" on the window.

Taking this version of the facts as true for purposes of this motion, a reasonable jury could find Sgt. Durkin's arrest of Ms. Hayhurst to be unreasonable and without probable cause. "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003).  Here, under Ms. Hayhurst's version of the facts, Sgt. Durkin arrested her even though she was trying to obey his orders to leave the park and even though she had not challenged or argued with him or otherwise engaged in disorderly conduct.

13

Similarly, under these facts, a reasonable jury could find Sgt. Durkin's handcuffing of Ms. Hayhurst to constitute excessive force.  Force is excessive when it is "objectively unreasonable" under all the facts and circumstances at the time. Estate of Smith at 515.  Resolving all factual disputes in Ms. Hayhurst's favor, on this record, a jury could find that Ms. Hayhurst was handcuffed because she was "tapping" on the window of Sgt. Durkin's vehicle to get his attention and that this application of force was unreasonable given her actions.

The Court also finds that these facts are sufficient to state a claim against both Sgt. Durkin and Cpl. Jones.  Although Cpl. Jones did not make the decision to arrest Ms. Hayhurst, he testified at deposition that he physically participated in "grabbing" her and placing her in Sgt. Durkin's police car. Because any person who "directly and intentionally applies the means by which another is seized in violation of the Fourth Amendment can be held liable under § 1983," this participation is sufficient to allow a reasonable jury to impose liability upon him for false arrest.  Berg 219 F.3d at 271.

A reasonable jury could also impose liability upon Cpl. Jones for excessive force, even though it is not disputed that Cpl. Jones did not physically participate in handcuffing Ms. Hayhurst.  A police officer can be liable under § 1983 if he fails to intervene when a constitutional violation occurs in his

14

presence.  See Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir.
2002); Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir.
1995).  Assuming a jury finds that handcuffing Ms. Hayhurst was
excessive force in violation of the Fourth Amendment, Cpl. Jones
can be liable for failing to intervene to prevent it.

In concluding that Ms. Hayhurst has presented
sufficient evidence to support her claims for false arrest and
excessive force, the Court notes that it does so on the factual
record presented and after resolving all disputed issues of fact
in the plaintiff's favor.  On a different evidentiary record,
such as that based on admissible evidence presented at trial or
one in which certain disputed facts are resolved by collateral
estoppel or otherwise, it is possible the Court could reach a
different conclusion.

B.    Qualified Immunity

Even if Ms. Hayhurst has presented sufficient evidence
to establish her claims for false arrest and excessive force, her
claims may still be defeated by the defendants' claims of
qualified immunity.  Qualified immunity shields certain
government officials, including police officers, from liability
for civil damages unless their conduct violates clearly
established statutory or constitutional rights of which a
reasonable person would have known.  Kopec v. Tate, 361 F.3d 772,

15

776 (3d Cir. 2004).  Qualified immunity is an affirmative defense for which defendants bear the burden of proof.  Id.

Evaluating a qualified immunity defense requires a two-step inquiry.  Saucier v. Katz, 533 U.S. 194 (2001).  First, the Court must consider whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right.  If the plaintiff's allegations fail to show a constitutional violation, then the inquiry is at an end.  Id. at 201.  If the plaintiff sufficiently alleges a violation of a constitutional right, the Court must determine whether that right was clearly established.  The Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.

Determining whether a defendant is entitled to qualified immunity is an objective question ordinarily decided by the Court as a matter of law.  Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004).  Where material facts remain in dispute, however, a court may not be able to resolve the issue of qualified immunity on summary judgment.  In such cases, a jury may need to determine the disputed historical facts material to deciding qualified immunity, usually through special interrogatories.  Id.; see also Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002).

16

Here, the Court believes that there are sufficient disputed material facts remaining in this case that a decision on qualified immunity cannot be made at this time.  Although mindful of the United States Supreme Court's admonition that qualified immunity is to be decided "at the earliest possible stage in litigation,"[6] the factual disputes between Ms. Hayhurst and the defendant officers are so numerous and so central to the issues at hand that the Court cannot conduct a qualified immunity analysis until they are resolved.

Analyzing whether the defendants have qualified immunity for the excessive force claim, for example, requires that the Court consider the totality of the circumstances, including, among other factors, the level of violence a suspect was exhibiting and whether the suspect complied with officers' orders.  See Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (considering suspect's compliance in finding officers' excessive force not protected by qualified immunity).  Yet, it remains a disputed issue of fact whether Sgt. Durkin ever ordered Ms. Hayhurst to leave the park and whether Ms. Hayhurst ever resisted this request.  On the basis of the record before the Court, therefore, the Court cannot resolve the issue of qualified immunity.

---

[6]  Hunter v. Bryant, 502 U.S. 224, 227 (1991)

Accordingly, the Court will defer a ruling on the defendants' qualified immunity defense at this time.  This ruling is without prejudice to the defendants' ability to raise qualified immunity at a later date, after the disputed issues of fact are resolved.

C.    Heck v. Humphrey

In Heck v. Humphrey, the United States Supreme Court held that a plaintiff who has been convicted of a crime cannot bring a § 1983 action that would directly or implicitly call into question the validity of that criminal conviction, unless the conviction is first reversed on direct appeal, expunged by executive order or declared invalid by a state tribunal.  512 U.S. 477, 486-87 (1994); see also Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006).  The defendants argue that Ms. Hayhurst's § 1983 false arrest claim necessarily implies that her conviction for disorderly conduct was invalid and is therefore barred, unless and until Ms. Hayhurst successfully overturns her conviction.  The Court agrees.

The central question in determining whether a claim is barred by Heck v. Humphrey is whether a judgment in favor of the plaintiff would necessarily imply the invalidity of her conviction or sentence.  Heck at 487, Gibson v. Superintendent of N.J. Dept. of Law and Pub. Safety, 411 F.3d 427, 447 (3d Cir.

18

2005).  Although some claims, such as those for malicious prosecution are categorically barred by Heck, Fourth Amendment claims for false arrest are not.  For such claims, a district court must conduct a "fact-based inquiry" to determine whether success on the § 1983 claim would necessarily imply the invalidity of the plaintiff's conviction.  Gibson at 448.

In Gibson, the court held that Heck applied to a § 1983 false arrest claim brought by a plaintiff who was arrested and convicted of drug offences after his car was stopped and searched, allegedly because of racial profiling.  The court held that, because there was no evidence supporting the plaintiff's criminal drug conviction other than the evidence obtained from the allegedly unconstitutional traffic stop, success on the plaintiff's § 1983 allegation that the stop lacked probable cause would necessarily undermine the plaintiff's conviction.  Id. at 451-52.

In reaching this conclusion, the Gibson court distinguished Montgomery v. De Simone, 159 F.3d 120 (3d Cir. 1998), which had held that Heck did not apply to a § 1983 false arrest claim challenging an arrest that had led to the plaintiff's conviction for drunken driving.  Although the language of the Montgomery decision could have been read as adopting a categorical rule that claims for false arrest could never "necessarily imply" the invalidity of an underlying

19

conviction, the Gibson court rejected that reading.  Instead, the
Gibson court noted that the validity of the Montgomery
plaintiff's conviction did not depend upon there being probable
cause for her traffic stop because there was independent
testimony concerning her driving and a radar measurement of her
speed, neither of which was obtained as a result of the allegedly
unlawful stop.  In such circumstances, the Montgomery plaintiff's
§ 1983 claim did not necessarily imply the invalidity of her
conviction.  Gibson at 450-51 (discussing Montgomery at 126 n.5).

  Applying the Gibson analysis here, the Court finds that
a ruling in favor of Ms. Hayhurst on her § 1983 false arrest
claim would necessarily imply the invalidity of her criminal
conviction for disorderly conduct.  As in Gibson, there is no
independent evidence, separate from that challenged in the § 1983
suit, upon which to uphold Ms. Hayhurst's conviction.  The same
disputed facts that Ms. Hayhurst contends were insufficient to
establish probable cause for her arrest - her interaction with
Sgt. Durkin in the park on the evening of June 28, 2006 - are the
same facts that formed the basis for her disorderly conduct
conviction.  A finding by a jury that these facts were
insufficient to constitute probable cause for her arrest would
necessarily imply that they were insufficient for her conviction.[7]

---

  [7]  In her sur-reply, Ms. Hayhurst argues that her false
arrest claim should not be barred by Heck because the citation
for which she was convicted was for a different violation than

20

Although Ms. Hayhurst's claim for false arrest is barred by <u>Heck</u>, the Court will not dismiss it at this time. <u>Heck</u> only bars § 1983 claims that suggest the invalidity of a criminal conviction until that conviction is overturned or declared invalid. If Ms. Hayhurst's pending appeal of her disorderly conduct appeal is successful, <u>Heck</u> will no longer apply. Ms. Hayhurst has therefore requested that, if the Court finds her false arrest claim barred by <u>Heck</u>, it should stay the entire case pending resolution of her criminal appeal. The defendants have filed an opposition to this request, asking that Ms. Hayhurst's false arrest claim be dismissed outright and that the remaining excessive force claim be allowed to proceed to trial.

Having found that Ms. Hayhurst's false arrest claim should be stayed under <u>Heck</u> until the resolution of her criminal

---

the citation that Sgt. Durkin issued her after her arrest. Ms. Hayhurst was convicted of violating 18 Pa. C.S. § 5503(a)(1), which prohibits engaging in "fighting or threatening, or in violent or tumultuous behavior," but the citation issued at the scene was for violating § 5503(a)(4), which prohibits creating "a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." The Court does not believe this fact alters its analysis of <u>Heck</u>. Ms. Hayhurst concedes that the gravamen of her false arrest claim is that there was no probable cause to arrest her. The evidence that Ms. Hayhurst presented in support of this claim at summary judgment is the testimony of her and her husband that she was not engaging in disorderly conduct and did not refuse to obey Sgt. Durkin's orders or engage in yelling, banging or any of the other disruptive behaviors of which she was accused. If Ms. Hayhurst ultimately succeeds on this claim, it would necessarily imply the invalidity of both the citation she was originally issued and the citation for which she was convicted.

appeal, the Court believes that Ms. Hayhurst's excessive force claim should be stayed as well.  Although the excessive force claim is not barred by <u>Heck</u>, it arises out of the same facts and involves the same evidence as the false arrest claim.  Declining to stay the excessive force claim would therefore risk having two separate trials on each of plaintiff's claims, should Ms. Hayhurst succeed in her appeal.  Although the Court is sympathetic to the defendants' desire to have this claim resolved expeditiously, the Court believes a stay of all claims is necessary to prevent the risk of essentially duplicative proceedings.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREA HAYHURST                    :    CIVIL ACTION
                                   :
                v.                 :
                                   :
UPPER MAKEFIELD                    :
TOWNSHIP, et al.                   :    NO. 06-3114

ORDER

AND NOW, this 20th day of June, 2007, upon consideration of the Defendants' Motion for Summary Judgment (Docket # 9) and the Plaintiff's Motion for Stay (Docket #21), and the oppositions and replies thereto, and after oral argument, IT IS HEREBY ORDERED, for the reasons stated in the accompanying Memorandum of Law, that the Defendants' Motion for Summary Judgment is DENIED and the Plaintiffs' Motion for a Stay is GRANTED.  This case shall be placed in civil suspense until the resolution of the plaintiff's appeal of her related criminal conviction, Commonwealth of Pennsylvania v. Hayhurst, Docket No. 3534 EDA 2006 (Pa. Super. Ct.).  Counsel for the plaintiff shall inform the Court and opposing counsel promptly upon a final resolution of the plaintiff's appeal.

BY THE COURT:

MARY A. McLAUGHLIN, J.